WAGNER et ux. v. BLANKENSHIP et al.

No. 35206.    Nov. 25, 1952.

*250 P. 2d 464.*

Pierce & Pierce and A. L. Brook, Muskogee, for plaintiffs in error.

Malcolm E. Rosser, Muskogee, for defendants in error.

HALLEY, V.C.J. This action was brought by Charles and Ruby Wagner against defendants, W. F. Blankenship et al., to recover the value of certain personal property which they claimed had been appropriated by the defendants to their own use. The defendants pleaded, among other defenses, the two-year statute of limitation, and their demurrer to plaintiffs' evidence on this ground was sustained by the trial court, and plaintiffs appeal.

The petition of plaintiffs alleged a contract to purchase a house near Muskogee from the defendants W. H. and Ida E. Blankenship and the making of a down payment of $600, with a mortgage for the balance of the purchase price, the mortgage being payable monthly; that after the purchase of the house plaintiffs bought on credit from a plumbing company in Muskogee a bath tub, toilet, sink, water heater, septic tank, and pipes and accessories necessary to install said articles in the house; that before these articles were installed plaintiffs discovered that they were unable to complete the purchase of the house; that in the summer of 1948, by mutual agreement with the Blankenships, plaintiffs were released from the contract of purchase and the mortgage made by them in consideration of their forfeiture of the down payment of $600; that at the time they left the property the plumbing fixtures above mentioned were, by agreement with the Blankenships, moved into the house but were not installed, with the understanding that plaintiffs could remove them at a later date; that defendants later installed said equipment in the house and refused to return it to plaintiffs or to pay them the sum of $603.85 which plaintiffs had contracted to pay for the fixtures. They sought recovery of such sum, together with an attorney's fee of $100, and asked that the judgment be declared a lien upon the property.

The Blankenships, in their answer, pleaded the statute of limitation of two years; pleaded further that they had a full settlement of all questions involved at the time plaintiffs decided they could not purchase the property; that some of the plumbing equipment had already been installed, and that plaintiffs abandoned their rights as to the remainder. The defendant Edwards filed a separate answer pleading the statute of limitation, and further pleaded that he moved into the house which belonged to Blankenship; that he found the property around the house, the septic tank and sink having been installed, and requested the plaintiffs to come and get the other property, but they did not do so. He disclaimed any interest or right in or to the personal property or the real estate involved.

At the trial, plaintiff Wagner testified that he had an express understanding with Blankenship at the time he moved from the house that he might leave the plumbing equipment at the house, and that he tried to sell it to defendant Blankenship but that Blankenship refused to buy it; that the defendant Edwards told him that he intended to install the property in the house, and that he told Edwards not to install it, that it was not paid for; but that thereafter he went to the house and found that it had been installed. At no time did he testify that Blankenship ever made any claim to the prop-

erty or had anything to do with its installation in the house. He testified that Blankenship told him that he did not have the money with which to buy this plumbing equipment and did not want it. There is no doubt that Edwards, the son-in-law of Blankenship, converted this equipment by installing it in the house owned by Blankenship in which Edwards was living. There is nothing to show that Blankenship agreed to this or authorized it in any way. Certainly Edwards could not force a sale of this plumbing equipment on Blankenship by attaching it to Blankenship's house.

The plaintiffs contend that their action is not based upon trover and conversion, but upon quasi or constructive contract, in that the defendants, having appropriated the plaintiffs' property to their own use (although acknowledging that it was the property of the plaintiffs and of the value of $603.85), thereby became bound in law to pay the plaintiffs the value thereof. In such case the three-year statute of limitation, 12 O.S. 1951 §95, subd. 2, should apply. The defendants treat the case as one for trover and conversion and claim that the action is barred by the two-year statute of limitation, 12 O.S. 1951 §95, subd. 3. It is unquestioned that the taking of plaintiffs' property occurred more than two years prior to the filing of this suit, but less than three years prior thereto.

The question of whether a person whose property has been converted may elect to sue either in tort or in assumpsit has been a rather controversial one, but this court has adopted the view that a person whose property has been converted by another to the enhancement or benefit of the tort-feasor's estate may elect not to sue on the tort, but to sue on the implied contract to pay for the property so converted. Hartsill v. Choctaw Lumber Co., 163 Okla. 240, 22 P. 2d 387. That case was one in which both the statutes of limitation applied, and we adopted the rule which is supported by the greater weight of authority in the United States, that the right of election to sue either in tort or in assumpsit belongs to the person whose property has been wrongfully converted. This question is thoroughly discussed in the note at 97 A.L.R., page 250. We quote from page 266 of that volume, where this statement is made:

"It is held by the weight of authority that where chattels are converted and used or consumed by the tort-feasor, who receives the benefit thereof, the owner may waive the tort involved in the conversion and may sue in assumpsit, although the tort-feasor has not sold the chattels."

Numerous cases sustaining this statement are cited. See, also, 1 C.J.S., Actions, §50b (2).

We held in Weems v. Melton, 47 Okla. 706, 150 P. 720, that where money was taken from the bank account of a depositor by the president of the bank and applied to the payment of a note of her husband without her consent, the bank president would be liable personally for such misappropriation of the deposit, and that it was not an action in conversion but was an action for money had and received.

In this case there is no question but that the defendant Edwards converted these plumbing fixtures wrongfully to his own use and benefit. True, it was not his property to which the fixtures were attached; but he was a tenant in the house and enjoyed the use of the fixtures so long as he was a tenant therein, so the judgment as to defendant Edwards must be reversed.

Now as to the defendants Blankenship, there is a different situation. The Blankenships were not tort-feasors. They did not authorize the conversion, though they have profited by it. There is no way to infer a contract against them. It is within the realm of possibility that if a judgment was to go against the Blankenships, they might lose this property through no fault of their own. It is well settled that a contract will not be inferred where to do so

474

would result in the perpetration of a wrong, or where to do so would be inequitable or against the express declaration of the person to be charged. The first two possibilities could arise in this case and the third is unquestionably here, because the Blankenships at all times said they could not and would not take these fixtures. This position is sustained by Klug v. Sheriffs, 129 Wis. 468, 109 N.W. 656, 7 L.R.A. (N.S.) 362; Irwin v. Jones, 46 Ind. App. 588, 92 N.E. 787; New York Cen. R. Co. v. Haley Beef & Supply Co., 236 Mass. 16, 127 N.E. 509; 17 C.J.S., Contracts, §4, sub. (b).

It is urged by plaintiffs that counsel for the defendants Blankenship admitted that the Blankenships had taken the plaintiffs' property. The pleadings of the Blankenships at all times denied that they had taken the property, and we do not believe that the statements of their counsel constituted admissions that the Blankenships had taken the property. In objecting to an irrelevant question, their counsel said:

"Just a minute; what on earth has that go to do with this? They owned it—these people took it. What else is there in the case?"

He also answered a question by Mr. Brook ("You will admit that he (Wagner) owes the obligation?") as follows:

"I don't admit immaterial matters, but it is not material. * * * as this demurrer stands, he owned the property, and we took it more than two years ago, and it is of the value alleged."

These remarks by counsel do not identify the Blankenships as being the "people" who took the property, and plaintiffs' evidence failed to show in any way that the Blankenships were tort-feasors, and all of the Blankenships' pleadings negatived any taking by them. These were not admissions deliberately and intentionally made, and are not binding on the Blankenships. Mid-Con. Gasoline Co. v. Back, 95 Okla.

29, 217 P. 1041; Wester v. Lucas, 177 Okla. 147, 57 P. 2d 1179.

The trial court based its decision in sustaining the demurrer to the evidence on the proposition that the two-year statute of limitation controlled in this case and that the cause of action was barred as to all defendants. We think the court was correct in sustaining the demurrer as to the Blankenships, but erred on the ground upon which it was sustained. In our opinion the two-year statute does not apply, but the three-year statute does apply. There was no evidence that the Blankenships were tort-feasors, and for that reason the demurrer to the evidence on the part of the Blankenships should have been sustained.

The judgment of the trial court is reversed as to the defendant Edwards, with directions to overrule his demurrer to the evidence; and the trial court's action in sustaining the demurrer as to the defendants Blankenship is affirmed.

CORN, DAVISON, JOHNSON, and O'NEAL, JJ., concur. WELCH and BINGAMAN, JJ., dissent.