### BROSWOOD OIL CO. et al. v. SAND SPRINGS HOME et al.

No. 22178. Nov. 10, 1936.

Rollin E. Gish and H. O. Bland, for plaintiffs in error.

Stuart, Doerner & Hamilton and P. P. Pinkerton, for defendants in error.

GIBSON, J. This case involves the respective rights of the oil and gas lessees on the one hand and the royalty owners on the other in and to the casinghead gas produced from the leased premises.

The parties on appeal will be referred to herein as plaintiffs and defendants, the order of their appearances at the trial.

Defendants are the owners and operators of an oil and gas mining lease dated August 7, 1908, covering certain lands in Tulsa county, the terms of which provide that "The lessor * * * does hereby demise, grant, lease, and let unto the lessee * * * all the oil deposits and natural gas in and under" said lands, "* * * with the exclusive right to prospect for, * * * and remove oil and natural gas. * * *" It is further provided that the lessor shall receive as royalty the sum of twelve and one-half per cent. of the gross proceeds of all crude oil extracted from said lands, with certain fixed payments per annum for each gas-producing well.

By subsequent conveyance from the lessor, or his heirs, the plaintiffs are the owners of the royalty, or mineral rights, in and under the leased premises.

After 16 years of operation under the lease, and approximately two years subsequent to the vesting of plaintiffs' title, defendants commenced to save and utilize the casinghead gas, or gas produced from oil wells on the premises, and thereupon commenced and continued regular remittances to plaintiffs for one-eighth of the value of such gas at the prevailing market price.

Such remittances were at regular intervals in the form of checks with endorsements thereon indicating that the same were in payment of the share of each plaintiff in the one-eighth of the "gas" produced from the leased premises. There was certain other evidence that one or more of the plaintiffs knew that these payments were for casinghead gas and accepted the payments as such. Remittances continued over a period of seven years, and this action then ensued.

The plaintiffs, as successors to the lessor in the oil and gas mining lease, now assert their claim to all the casinghead gas produced, and seek by this action to recover the value thereof as may be disclosed by an equitable accounting.

They base their claim upon the alleged restrictive nature of the granting clause and the privilege extended the lessees in the lease, maintaining in this behalf that said lease did not grant to lessees the right to produce casinghead gas, in that such product was neither oil nor gas within the meaning of the terms "oil deposits" and "natural gas" as contained in said lease, and that such product was not within the contemplation of the parties to the lease contract, and therefore the right to produce the same did not pass thereunder. Hammett Oil Co. v. Gypsy Oil Co., 95 Okla. 235, 218 P. 501.

Defendants take the position that the casinghead gas was defined within the term "oil deposits" and constituted a portion thereof and as such passed to lessees under the demise of such deposits. Defendants now contend that the parties to this action have by their acts so construed the provisions of the lease.

Such were the issues as framed by the pleadings, and the trial court, without the intervention of a jury, rendered judgment for defendants.

From an examination of the record, it becomes clearly apparent that the court construed the lease and determined that the provisions thereof passed the casinghead gas, as constituting oil deposits, to the lessees. While there is an absence of specific finding to that effect, such finding was necessary to the conclusion reached, in that the court announced its intention to construe the lease after having declined evidence on the part of the plaintiffs offered in rebuttal of a showing that the parties themselves had placed upon the lease contract the common construction that casinghead gas constituted "oil deposits" and passed under the lease to the lessees.

Under this state of the record our unavoidable conclusion is that the trial court deemed it its duty to construe the provisions of the lease without regard to the alleged common construction placed thereon by the parties themselves.

The action of the trial court in so construing the lease as passing the casinghead gas to the lessees, and its action in sustaining the objection to evidence offered in rebuttal of a showing that the parties had placed a like construction thereon, are assigned here as error.

The lease in the instant case makes no specific reference to casinghead gas. It has become a settled rule in this state that such a lease which fails by specific provision or by necessary implication to make disposition of the casinghead gas does not pass such product to the lessee in the absence of a contrary construction placed thereon by the parties. Smith v. Pulaski Oil Co., 88 Okla. 47, 211 P. 1047; Hammett Oil Co. v. Gypsy Oil Co., 95 Okla. 235, 218 P. 501; Mullendore v. Minnehoma Oil Co., 114 Okla. 251, 246 P. 837; Ludey v. Pure Oil Co., 157 Okla. 1, 11 P. (2d) 102.

The writer hereof does not subscribe to that rule, but feels bound thereby. Speaking for myself alone, I am of the opinion that casinghead gas is a component part of oil. In this view I am sustained by leading text writers, and by many authorities, among them, Twin Hills Gasoline Co. v. Bradford Oil Corporation, 264 Fed. 440 (opinion by Judge Williams, former Chief Justice of this court), Wemple v. Producers Oil Co. (La.) 83 So. 232, and Locke v. Russell, 75 W. Va. 602, 84 S. E. 948.

In the Hammett Case it was held that gasoline manufactured from casinghead gas was neither oil nor gas within the contemplation of an oil and gas lease which makes no reference to casinghead gas and nothing appears to indicate that the parties have contracted concerning the same. Upon this premise this court has based its most recent ruling on the question here considered, which will be found in the syllabus of Ludey v. Pure Oil Co., supra, as follows:

"Casinghead gas is neither oil nor gas within the contemplation of an oil and gas lease which makes no reference to casinghead gas and nothing appears to indicate that the parties have contracted concerning the same."

In the opinion there the court said:

"It follows that the casinghead gas produced from the land in controversy belonged to the landowners because in the lease no mention is made of casinghead."

Thus the rule now stands: If no mention is made of casinghead gas in the lease, and no interpretation to the contrary has been placed thereon by the parties, such casinghead gas remains the property of the lessor and does not pass to the lessee.

It is settled by the decision in the Ludey Case that the term "oil" does not include casinghead gas. We hold that there exists no material difference between that term and the term "oil deposits" as such terms are used in the ordinary oil and gas lease.

Common usage of the terms "oil" and "natural gas" is the basic principle upon which the foregoing holding is based. A lease executed for the sole and only purpose of mining for oil and gas, reserving to the lessor a royalty on oil and on gas, means oil in its ordinary acceptation and gas from a gas well as the same is ordinarily understood (Mullendore v. Minnehoma Oil Co., supra), and in the absence of a contrary intention of the parties the courts will so construe the lease contract. Sections 9467, 9468, O. S. 1931.

The rule in the Hammett Case has been recognized in Mussellem v. Magnolia Pet. Co., 107 Okla. 183, 231 P. 526, and Wilson v. King Smith Refining Co., 119 Okla. 256, 250 P. 90.

Since casinghead gas is neither oil nor gas within the contemplation of the lease here under consideration, it follows that said product remained the property of the landowner and passed to plaintiffs herein free from the lease now owned by defendants, unless the present parties in interest have placed a different construction upon the provisions of the lease.

Defendants alleged and submitted proof that such construction had been mutually agreed upon by the parties. The court denied plaintiffs the privilege of rebutting this proof. The action of the trial court in so doing constituted reversible error. Under the issues and the facts presented by this record, it was the duty of the court to receive proffered evidence upon the question of the construction placed upon the lease by the parties.

The judgment is reversed and the cause remanded, with directions to grant plaintiffs a new trial.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, BUSBY, PHELPS, and CORN, JJ., concur. RILEY and WELCH, JJ., absent.